## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Larry W. Rader, | Case No. 19-cv-1275 (NEB/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Ally Financial, Inc., | |
| Defendant, | |

Larry W. Rader, 2411 Ridgeview Drive, Wausau, WI 54401 (pro se Plaintiff); and

Kristy A. Fahland and Lauren Hoglund, Messerli & Kramer PA, 100 South Fifth Street, Suite 1400, Minneapolis, MN 55402 (for Defendant).

## I. INTRODUCTION

This matter is before the Court on pro se Plaintiff Larry W. Rader's motion to strike (ECF No. 6); motion for summary judgment (ECF No. 25); and motion to compel (ECF No. 55). The Court *sua sponte* also issued an Order to Show Cause (ECF No. 47), questioning whether Plaintiff properly invoked this Court's subject-matter jurisdiction. Motions in this matter have been referred to the undersigned for a report and recommendation to the district court, the Honorable Nancy E. Brasel, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. (ECF No. 21.)

Because the Court concludes that Plaintiff has failed to meet his burden to prove the existence of subject-matter jurisdiction, **IT IS HEREBY RECOMMENDED** that this

1

matter be **DISMISSED WITHOUT PREJUDICE**, and all motions be **DENIED AS MOOT**.

## II. FACTUAL ALLEGATIONS

This case involves a dispute over a $1,994 extended warranty charged in connection with the purchase of a car that was financed under an installment contract. The total amount financed—including the price of the extended warranty—is $13,225.58.[1]

Plaintiff,[2] a Wisconsin resident, brings this action against Defendant Ally Financial, Inc., "a foreign corporation licensed to[]do business in Minnesota." (Compl. ¶ 2 (emphasis removed), ECF No. 1.) Defendant is a Delaware corporation. (Am. Answer ¶ 2, ECF No. 45.) Plaintiff alleges that, in March 2019, he purchased a used car from a dealership located in Wausau, Wisconsin, and the dealership improperly charged him $1,994 for an extended warranty "without disclosing the new car warranty on the vehicle." (Compl. ¶¶ 2, 4.) Plaintiff alleges that Defendant purchased the financing contract from the dealership. Plaintiff additionally alleges that, at some point, the dealership sent Defendant a refund of the extended warranty price. Plaintiff alleges that, despite being notified of the improper

---

[1] *See infra* n.13.

[2] Plaintiff is proceeding pro se, and the Court recognizes that pro se filings are to be accorded a "liberal construction." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). At the same time, the Court may not "assume the role of advocate for the pro se litigant." *Machen v. Iverson*, No. 11-cv-1557 (DWF/JSM), 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012) (quotation omitted), *adopting report and recommendation*, 2012 WL 567128 (D. Minn. Feb. 21, 2012); *see Bracken v. Dormire*, 247 F.3d 699, 705 (8th Cir. 2001) (Arnold, J., dissenting) ("Of course, a *pro se* pleading is not a magic hat out of which a court may pull any claim it thinks should have been advanced.").

Although Plaintiff is proceeding pro se in this case, Plaintiff is a trained attorney, who was admitted to the State Bar of Wisconsin in 1960. *Lawyer Search*, State Bar of Wis., https://www.wisbar.org/directories/pages/ lawyerprofile.aspx?Memberid=1008385 (last accessed Jan. 13, 2020). (*See* ECF No. 32 at 1 (describing legal work).) Plaintiff's license has been temporarily suspended "due to a severe cardiac related disability." (ECF No. 51 at 3.)

extended warranty, Defendant has continued to charge interest on the amount of the extended warranty.

In the Complaint, Plaintiff alleges Defendant has (1) charged interest in violation of Wisconsin's usury law, Wis. Stat. § 138.05, and the federal criminal mail fraud statute, 18 U.S.C. § 1341, and (2) invaded his privacy. Plaintiff requests "compensatory damages and punitive damages, removal of [the] lien on his car title, and discharge of any claim for interest or principal under the alleged contract" as well as "costs and fees." (Compl. ¶ 8.) Plaintiff also requests $150,000 in punitive damages. (Compl. ¶ 8.)

### III. PROCEDURAL HISTORY

Following a combined pretrial scheduling conference and motion hearing on August 1, 2019, the Court had cause to question whether subject-matter jurisdiction, particularly the $75,000 jurisdictional minimum under 28 U.S.C. § 1332(a), was satisfied in this case based on conflicting information in the record, including but not limited to statements Plaintiff made at the hearing "that this matter could have been brought in small-claims court and that his damages could be over $1 million." (Order to Show Cause at 5, ECF No. 47; *see* Aug. 1, 2019 Tr. 6:24-7:1, 9:16-20, ECF No. 80; *see also* Aug. 1, 2019 Tr. 8:11-11:19.[3]) The Court issued an Order to Show Cause, directing the parties to address the amount in controversy and setting the matter on for a hearing in conjunction with the October 31, 2019 hearing on Plaintiff's motion for summary judgment. (Order to Show Cause at 8-9; *see* ECF Nos. 25, 40, 41.)

---

[3] The Court notes that the period of time for requesting redaction has expired and neither party requested that the hearing transcript be redacted. (ECF No. 80; *see also* ECF No. 76.) *See* D. Minn. LR 5.5.

On August 16, as part of another filing, Plaintiff referred back to a prior filing he made on July 25, wherein he stated in relevant part:

> WHEREFORE, Plaintiff submits that the answer and the proposed amended answer of [Defendant] must be stricken with ENTRY for judgment of liability against [Defendant] for plaintiff on Counts 1 and 2, and for damages on Count 1 for plaintiff of $220,000 plus interest as shown on [8] to date of entry, plus costs, with 1 million dollars in damages for breach of privacy under Count 2 [27], or alternatively resolved by mediation or jury trial.

(ECF No. 53 at 1 (quoting ECF No. 35 at 1) (numerical insertions in original).)

On September 20, Defendant responded to the Order to Show Cause, asserting that Plaintiff had not met his burden to show the existence of subject-matter jurisdiction. (*See generally* Def.'s Resp. to Order to Show Cause, ECF No. 68.)

On September 24, Plaintiff replied with a memorandum, stating among other things:

> *Forgive me*, but Plaintiff believes we are still focused-on a federal claim exceeding $75000 to sustain jurisdiction under 28 USC 1332, notwithstanding that the issue is moot as plaintiff has shown in his prior filings here and in the 8th Circuit, 19-2942,[4] citing the [Defendant] violation of the Fair Debt Collection Practices Act, 15 USC 1692, as well as his right to a jury trial under the 7th Amendment to the U.S. Constitution.

(ECF No. 69 at 1.) Plaintiff also included as an exhibit six pages of information regarding Defendant, including historical information, sponsorships, and a 2013 settlement regarding

---

[4] In early September 2019, Plaintiff filed an appeal with the Eighth Circuit Court of Appeals, challenging the district court's order denying his objections to certain rulings of the undersigned and request for removal of the undersigned. (ECF Nos. 63, 64.) *See Rader v. Ally Financial, Inc.*, No. 19-2942 (8th Cir.). Plaintiff's appeal was subsequently "dismissed for lack of jurisdiction as premature." (ECF No. 67 at 1.)

a discriminatory pricing system that resulted in higher interest rates on auto loans for certain borrowers. (*See generally* ECF No. 70.)

On October 11, four days after the deadline for Plaintiff's reply, Plaintiff filed "Plaintiff's Offer of Proof & Exhibits on Hearing set for 10/31/2019" ("Offer of Proof") (ECF No. 71). In this filing, Plaintiff asserted that Defendant charged usurious interest without a valid assignment and that this conduct resulted in "personal injury strife and emergency hospital medical expenses" as well as "related emergency expenses" (collectively, "medical expenses"). (Offer of Proof at 1-2 (emphasis removed).) With respect to the calculation of his damages, Plaintiff submitted in relevant part:

> [Defendant] thus intentionally made daily entries of interest of $4.05 per day and late penalties for 241 days to the day of this hearing on plaintiff's pseudo account made case-public herein causing personal injury strife and emergency hospital medical expenses of $13238.29 per medical records exhibit #101, and related emergency expenses (ambulance service, car tow and storage fee, and repairs of near $800.
>
> . . . [Defendant] has also withheld the car title and unlawfully placed a lien on title as well as [Defendant's] claim to insurance coverage on the vehicle paid by plaintiff—also a Breach of Privacy.
>
> . . .
>
> DAMAGES: As the complaint and motion for default judgment, alternatively as the summary judgment alleges, plaintiff seeks damages collectively calculated at $2000 per day for these special damages labeled as punitive damages, presently $482,000, for Recidivist daily acts by [Defendant], plus a claim for [Defendant's] daily on-going Breach of Privacy.
>
> . . .

> Since Recidivist claims are dominant here, plaintiff made claim of $150000 for punitive and special damages under a demand of $2000 per day plus the separate Breach of Privacy claim all under a demand for judgment as demanded in the "Wherefore demand" at [35, 53, 58].
>
> Under 28 USC 1332 causes of action can be combined to arrive at the $75000.01 floor with the Breach of Privacy claim and also its punitive damages.

(Offer of Proof at 2 (numerical insertions in original) (emphasis removed); *see also id.* at 1 (describing issue as whether Plaintiff is "entitle[d] . . . to Judgment as calculated daily by plaintiff at $2000 for combined special compensatory damages which include personal injury strife, daily interest, and recidivist punitive damages as supplemented since complaint, for 241 days, to 10/31/19 for $482000, plus, one million dollars for daily intrusion of plaintiff's Breach of Privacy" (emphasis removed).)  Plaintiff also asserted that Defendant had withheld certain documents from him.  Attached to this filing were letters from Defendant to the dealership and Plaintiff regarding the financing contract; an approval by Defendant related to that contract; and medical records related to a hospital stay by Plaintiff between April 1 and 5.

At the hearing on October 31, Plaintiff orally moved to amend the Complaint in accordance with the Offer of Proof.  (Oct. 31, 2019 Tr. 3:23-25, ECF No. 78.[5])  Defendant objected to the Offer of Proof as untimely filed, orally moved to strike it, and asserted that any motion to amend needed to be properly brought in accordance with the deadline for

---

[5] The period of time for requesting redaction to this transcript has likewise expired and neither party requested that the hearing transcript be redacted.  (ECF No. 78.)  *See* D. Minn. LR 5.5.

amending the pleadings in the Pretrial Scheduling Order and the Local Rules of this District.  (Oct. 31, 2019 Tr. 5:5-21.)

## IV. ANALYSIS

As this Court previously stated, "'[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  And, this Court has an obligation to ensure that it has jurisdiction over this matter.  *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Id.*; *see* Fed. R. Civ. P. 12(h)(3).

### A.  Subject-Matter Jurisdiction

"The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332.  Section 1331 provides for '[f]ederal-question' jurisdiction, § 1332 for '[d]iversity of citizenship' jurisdiction."  *Arbaugh*, 546 U.S. at 513 (alteration in original).  In the Complaint and accompanying civil cover sheet, Plaintiff alleged that subject-matter jurisdiction exists under both of these statutes.  (Compl. ¶ 3; ECF No. 1-2.) As the party invoking federal jurisdiction, "[P]laintiff bears the burden of proving subject matter jurisdiction."  *Aly v. Hanzada for Imp. & Exp. Co., LTD*, 864 F.3d 844, 847 (8th Cir. 2017) (quotation omitted); *see, e.g.*, *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) ("As a party invoking the court's jurisdiction, Auto Owners has an

obligation to show, by a preponderance of the evidence, facts supporting jurisdiction.");

*Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir.

2010) ("The burden of proving federal jurisdiction, however, is on the party seeking to

establish it, and this burden may not be shifted to the other party." (quotation omitted)).

### B. Federal Question, 28 U.S.C. § 1331

Section 1331 provides that "[t]he district court shall have original jurisdiction of all

civil actions arising under the Constitution, laws, or treaties of the United States." 28

U.S.C. § 1331. "A plaintiff properly invokes § 1331 jurisdiction when she pleads a

colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh*,

546 U.S. at 513.

### 1. 18 U.S.C. § 1341

The only alleged violation of federal law pleaded in the Complaint is 18 U.S.C.

§ 1341, the federal criminal mail fraud statute. "When a private citizen relies on a federal

statute as a basis for federal question jurisdiction, that statute must provide a private cause

of action, or else a federal court will not have subject matter jurisdiction to hear the

dispute." *Lowe v. ViewPoint Bank*, 972 F. Supp. 2d 947, 954 (N. D. Tex. 2013) (citing

*Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 817 (1986)); *accord Aaronson v.

Kangarani*, No. 1:19-cv-00468-CL, 2019 WL 3490447, at *3 (D. Or. June 20, 2019) ("As

such, where no private right of action exists to enforce the criminal statute, the statute

cannot serve as the basis for federal question jurisdiction."), *adopting report and

recommendation*, 2019 WL 3462540 (D. Or. July 31, 2019). Courts have held that there

is no private right of action under 18 U.S.C. § 1341. *Wisdom v. First Midwest Bank*, 167

F.3d 402, 409 (8th Cir. 1999); *see, e.g.*, *Ross v. Orange Cty. Bar Ass'n*, 369 F. App'x 868, 869 (9th Cir. 2010) ("Ross had no separate private right of action for mail fraud under 18 U.S.C. § 1341."); *Kathrein v. McGrath*, 166 F. App'x 858, 863 (7th Cir. 2006) ("Moreover, though Kathrein frequently has invoked the federal mail fraud statute in this litigation, *see* 18 U.S.C. § 1341, there is no private right of action under that criminal provision."); *Aaronson*, 2019 WL 3490447, at *3 (citing cases).

Therefore, Plaintiff cannot rely on 18 U.S.C. § 1341 as a basis for conferring subject-matter jurisdiction under 28 U.S.C. § 1331. *Aaronson*, 2019 WL 3490447, at *3; *Jones v. Bell Enters., Inc.*, 781 F. Supp. 483, 484 (E.D. Tex. 1991) ("Also, the federal question jurisdiction statute, 28 U.S.C. § 1331, cannot afford a federal court with jurisdiction over Jones' claims because the mail fraud statute, 18 U.S.C. § 1341, does not carry with it an implied private right of action.").

## 2. Other Federal Authorities Referenced

At various times, Plaintiff has referenced other federal laws, such as the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et al.*, as well as the Fourth Amendment and Seventh Amendments.[6] Plaintiff has not, however, pleaded violations of

---

[6] (*See, e.g.*, ECF Nos. 25 at 1 ("[Defendant] has placed demands for interest over the internet and U.S. mail contrary [to] . . . 28 USC 1341 and 1343, for which plaintiff is due relief."); 30 at 1 (privacy "rights protected by the U.S. Constitution" (citing *Griswold v. Connecticut*, 381 U.S. 479 (1965)); 32 at 2 ("Include Breach of Privacy under the U.S. Constitution, Violation of Usurious interest charges including scheme to defraud as covered by 28 USC 1343, et al."); 49 at 1 ("The SJ motion lists violations of . . . 28 USC 1341 and 1343, mail and internet use *since* 3/14/19 to *enable* its tortious conduct under the federal laws."); 50 at 1 (citing "18 USC 1241 and 1243"); 51 at 2 ("First, Plaintiff has alleged a Breach of Privacy arising under Fourth Amendment, and also, under the Seventh Amendment, a guarantee of a jury trial as requested by the plaintiff in the complaint."), 3 ("Finally, [Defendant] sent its false demands via the mail and internet to plaintiff and others under 18 USC 1341 and 1343 . . . ."); 69 at 1 ("[T]he issue is moot as plaintiff has shown in his prior filings here and in the 8th Circuit, 19-2942, citing the [Defendant] violation of the Fair Debt Collection Practices Act, 15 USC 1692, as well as his right to a jury trial under the 7th Amendment to the U.S. Constitution."); *see also* Offer of Proof at 2 (using FDCPA as guidance in determining daily damage amount).)

9

the FDCPA or his constitutional rights in the Complaint; provided this Court with a proposed Amended Complaint; or properly sought leave to amend to include any such claims. *See* D. Minn. LR 15.1(b) ("Any motion to amend a pleading must be accompanied by: (1) a copy of the proposed amended pleading, and (2) a version of the proposed amended pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how the proposed amended pleading differs from the operative pleading."); *see also, e.g.*, *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 958 (8th Cir. 2012) ("A district court does not abuse its discretion in denying leave to amend when a plaintiff has not submitted a proposed amended pleading in accord with a local procedural rule."); *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) ("We have held, also, that granting leave to amend a complaint where the plaintiff has not submitted a proposed amendment is inappropriate."). Plaintiff's status as a pro se litigant does not excuse him from following the Local Rules. *Bunch v. Univ. of Ark. Bd. of Trustees*, 863 F.3d 1062, 1067 (8th Cir. 2017) ("Bunch's status as a pro se litigant did not excuse her from following the local rules." (citing *Bennett v. Dr Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002)).

### C. Diversity of Citizenship, 28 U.S.C. § 1332

Federal courts also have original jurisdiction over civil actions involving citizens of different states where the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1); *see Arbaugh*, 546 U.S. at 513 ("[A plaintiff] invokes § 1332 jurisdiction when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional

amount, currently $75,000.").  Plaintiff is a citizen of Wisconsin and Defendant is a citizen of Delaware.  (Compl. ¶ 1; Am. Answer ¶ 2.)

"The proponent of diversity jurisdiction has the burden of proving that the amount in controversy exceeds the jurisdictional minimum."  *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009).  "A complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount."  *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010) (quotation omitted); *see also, e.g.*, *Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002).  Thus, a suit will be dismissed "if, *from the face of the pleadings*, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed *or* if, *from the proofs*, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount."  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (emphasis added); *accord Sanders v. Hisler*, 479 F.3d 71, 73 (8th Cir. 1973).  "The legal certainty standard is met where the legal impossibility of recovery is so certain as virtually to negative the plaintiff's good faith in asserting the claim."  *Schubert*, 649 F.3d at 822 (quotation omitted).

As the party invoking this Court's jurisdiction, Plaintiff "has an obligation to show, by a preponderance of the evidence, facts supporting jurisdiction."  *Id.*  The dispositive question is whether Plaintiff has shown by a preponderance of the evidence that his claims could legally satisfy the amount-in-controversy requirement.  *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 831 (8th Cir. 2005).  Accordingly, the Court turns to whether Plaintiff has proffered sufficient evidence to permit a fact finder to conclude

11

legally that his damages exceed $75,000. *Martin v. State Farm Fire & Cas. Co.*, 826 F. Supp. 2d 1133, 1136-37 (D. Minn. 2011); *see Kopp*, 280 F.3d at 885 ("The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000.").

The Complaint does not allege a specific amount in controversy other than Plaintiff's request for punitive damages. As Plaintiff has not "allege[d] a specific amount in controversy in his complaint, the amount in controversy depends upon the value of the relief [he] seeks." *Clark v. Mathews Int'l Corp.*, 639 F.3d 391, 396 (8th Cir. 2011); *accord Am. Family Mut. Ins. Co. v. Vein Centers for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019).

### 1.  Wis. Stat. § 138.05

Plaintiff alleges that Defendant has violated Wis. Stat. § 138.05 by charging usurious interest on the amount of the extended warranty in excess of the amount permitted by Wisconsin law, and has continued to charge such interest even after the dealership refunded the amount of the extended warranty.

### a.  Compensatory Damages

Section 138.05 provides for certain maximum interest rates. *See generally* Wis. Stat. § 138.05(1). Section 138.05 states that these rates apply "[e]xcept as authorized by other statutes . . . ." *Id.*; *cf.* Wis. Stat. § 138.04 ("The rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less [sic] sum or for a longer or a shorter time;

but parties may contract for the payment and receipt of a rate of interest not exceeding the rate allowed in ss. 138.041 to 138.056, 138.09 to 138.14, 218.0101 to 218.0163, or 422.201, in which case such rate shall be clearly expressed in writing.").

Section 218.0142 governs installment sales of motor vehicles, such as the one that occurred here. *See generally* Wis. Stat. § 218.0142; *see id.* § 218.0101(32) (defining "retail installment contract" or "installment contract" as "every contract to sell one or more motor vehicles at retail, in which the price of the motor vehicle is payable in one or more installments over a period of time and in which the seller has either retained title to the goods or has taken or retained a security interest in the goods under a form of contract designated either as a conditional sale, chattel mortgage or otherwise").  Plaintiff has submitted the Motor Vehicle Purchase Contract along with Parts 5 and 6 of the Motor Vehicle Simple Interest Installment Sale and Security Agreement ("Agreement") to the Court.[7]

Section 218.0142 states that "[a] retail installment sale made after October 31, 1984, is not subject to any maximum finance charge limit." *Id.* § 218.0142(3).  A finance charge is "the sum of all charges, payable directly or indirectly by the customer as an incident to or as a condition of the extension of credit," including interest.  *Id.* § 421.301(20), (a); *see id.* § 218.0101(12) (referring to Wis. Stat. § 421.301(20)).  The Agreement at issue, which contains the alleged usurious interest rate, was entered into in March 2019.

---

[7] These documents were initially filed as exhibits to Plaintiff's motion for summary judgment and were difficult to read.  (ECF No. 25 at 2-9.)  Plaintiff provided the original documents to the Court in response to the Court's July 19, 2019 Order (ECF No. 33) directing him to provide legible copies.  (ECF Nos. 34, 34-1.)

Because § 138.05 does not apply in situations where interest rates are authorized by another statute, and because finance charges (including interest rates) for installment sales involving the purchase of a motor vehicle are authorized under § 218.0142, the amount of damages Plaintiff claims in connection with his § 138.05 claim are not in controversy because they could not be legally awarded under § 138.05.  *See Kopp*, 280 F.3d at 885 ("[A]n amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it."); *Sanders*, 479 F.2d at 74 ("Thus, where a complaint prays for damages which are not legally recoverable, dismissal is justified.").

### b.  Punitive Damages

Plaintiff also claims $150,000 in punitive damages in connection with his § 138.05 claim based on Defendant's alleged "recidivist" conduct.[8]  "Punitive damages are included in the amount in controversy, but the existence of the required amount must be supported by competent proof."  *Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 995 (8th Cir. 2017) (quotation omitted); *accord OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 348 (8th Cir. 2007); *Larkin v. Brown*, 41 F.3d 387, 388-89 (8th Cir. 1994).  "[W]hen determining the amount in controversy, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages."  *Larkin*, 41 F.3d at 389 (quotation omitted); *accord OnePoint Sol.*, 486 F.3d at 348.  The Court previously pointed out to Plaintiff that the legal availability of punitive damages in

---

[8] (*See, e.g.*, Compl. ¶ 6 ("entitling plaintiff to daily punitive damages for usurious interest"), ¶ 8 ("Plaintiff calculates that he is due, in addition to Privacy damages and deletion of all interest, Punitive damages against [Defendant] for daily usurious interest insertions . . . ."); Offer of Proof at 1-2 (associating punitive damages with usurious interest claim); *see also* ECF Nos. 69 at 1, 70 at 4 ("recidivist" nature of conduct based on 2013 settlement involving discriminatory pricing scheme leading to higher interest rates).)

connection with the alleged usury violation was not clear from the Complaint. In response, Plaintiff has pointed to no authority authorizing punitive damages in connection with his claim under § 138.05, which arguably ends this Court's inquiry.

"In Wisconsin, punitive damages are authorized by statute, *see* Wis. Stat. § 895.043, and may be awarded 'if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff.'" *Kimble v. Land Concepts, Inc.*, 845 N.W.2d 395, 406 (Wis. 2014) (quoting Wis. Stat. § 895.043(3)); *see generally Groshek v. Trewin*, 784 N.W.2d 163, 171-76 (Wis. 2010) (discussing constitutional, statutory, and common-law underpinnings of punitive damages in Wisconsin). "Wisconsin law allows awards of punitive damages when 'compensatory damages' are imposed." *Pro-Pac, Inc. v. WOW Logistics Co.*, 721 F.3d 781, 788 (7th Cir. 2013) (citing *Groshek*, 784 N.W.2d at 174-76). But, "it is a fundamental principle of Wisconsin law that punitive damages are available only where the claimant recovers compensatory damages." *C & A Invs. v. Kelly*, 792 N.W.2d 644, 647 (Wis. Ct. App. 2010) (citing *Tucker v. Marcus*, 418 N.W.2d 818 (1988)); *see Groshek*, 784 N.W.2d at 175 ("[O]ur holding in *Tucker* forecloses recovery of punitive damages in a case where there is no award of compensatory damages.").

For the reasons stated above, compensatory damages could not be legally awarded under § 138.05. And because compensatory damages could not be legally awarded, neither could punitive damages. *See, e.g.*, *Groshek*, 784 N.W.2d at 175; *C & A Invs.*, 792 N.W.2d at 647. Therefore, the $150,000 in punitive damages claimed by Plaintiff is likewise not in controversy. *See Kopp*, 280 F.3d at 885.

15

### 2.  Discharge of Financing Contract & Removal of Lien

Plaintiff also seeks removal of the lien on his car title and "discharge of any claim for interest or principal under the alleged contract."  (Compl. at pg. 3.)  Plaintiff has not specifically addressed the value of this relief.  Based on the Agreement, it appears that the amount financed was $13,225.58.  The Court will therefore include $13,226 in the amount in controversy.[9]

### 3.  Invasion of Privacy

As best as this Court is able to tell, Plaintiff is also alleging that Defendant invaded his privacy by interfering with the financing contract he had with the dealership.  (*See, e.g.*, ECF Nos. 27 at 1 ("This case also involves the Interference or Intrusion by [Defendant] in the private contractual affairs of the plaintiff in purchasing a 2018 used Toyota automobile on or after March 6, 2019 from Ballweg Automotive, Inc. . . . ." (emphasis omitted)); 30 ¶ 3 (stating alleged unlawful assignment entitled Plaintiff "to damages for Breach of Privacy and Intrusion unlawfully in the [P]laintiff[']s business affairs"); *see also* ECF No. 29 at 1.)

"Wisconsin law provides a cause of action for invasion of privacy by a private party."  *Emiabata v. Marten Transp., Ltd.*, 574 F. Supp. 2d 912, 917 (W.D. Wis. 2007) (citing Wis. Stat. § 995.50(1) ("The right of privacy is recognized in this state.")).  Under Wisconsin law, an "invasion of privacy" involves any of the following:

> (a) Intrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable

---

[9] This figure is likely generous considering the more accurate value of such relief is the balance remaining on the financing contract, not the purchase price.  *See Ally Bank v. Finstad*, No. 18-cv-01920 (ECT/TNL), 2018 WL 6267656, at *4 n.4 (D. Minn. Nov. 30, 2018) ("[T]he purchase price of the car says nothing about the amount in controversy here—the balance owed on the car.").  *See also infra* n.13.

person would consider private or in a manner which is
actionable for trespass.

(b) The use, for advertising purposes or for purposes of trade,
of the name, portrait or picture of any living person, without
having first obtained the written consent of the person or, if the
person is a minor, of his or her parent or guardian.

(c) Publicity given to a matter concerning the private life of
another, of a kind highly offensive to a reasonable person, if
the defendant has acted either unreasonably or recklessly as to
whether there was a legitimate public interest in the matter
involved, or with actual knowledge that none existed. It is not
an invasion of privacy to communicate any information
available to the public as a matter of public record.

(d) Conduct that is prohibited under s. 942.09 [(representations
depicting nudity)], regardless of whether there has been a
criminal action related to the conduct, and regardless of the
outcome of the criminal action, if there has been a criminal
action related to the conduct.

Wis. Stat. § 995.50(2).

A person

whose privacy is unreasonably invaded is entitled to the
following relief:

(a) Equitable relief to prevent and restrain such invasion,
excluding prior restraint against constitutionally protected
communication privately and through the public media;

(b) Compensatory damages based either on plaintiff's loss or
defendant's unjust enrichment; and

(c) A reasonable amount for attorney fees.

*Id.* § 995.50(1). "Compensatory damages are not limited to damages for pecuniary loss,

but shall not be presumed in the absence of proof." *Id.* § 995.50(4).

While it is difficult for the Court to discern how Plaintiff's allegations constitute a violation of any one of § 995.50(2)'s four categories, the Court will assume for purposes of this analysis that the type of invasion alleged by Plaintiff is encompassed therein. Plaintiff has stated, on multiple occasions now, that he seeks $1 million dollars in connection with his invasion-of-privacy claim.  (*See, e.g.*, ECF No. 35 at 1; ECF No. 53 at 1; Offer of Proof at 1.)  While Plaintiff's evaluation of his invasion-of-privacy claim is relevant to determining the amount in controversy, it is not necessarily dispositive. *Missouri ex rel. Pemiscot Cty v. W. Sur. Co.*, 51 F.3d 170, 1173 (8th Cir. 1995); *McGuire v. State Farm Fire & Cas. Co.*, 108 F. Supp.3d 680, 687 (D. Minn. 2015).

Plaintiff has done nothing more than baldly assert that $1 million is the value of the right he seeks to enforce.  It is not apparent to the Court what Plaintiff's $1 million figure is based on, whether it be the value of some sort of equitable relief, an amount to compensate Plaintiff for some unspecified loss, any purported unjust enrichment to Defendant, a combination thereof, or something else entirely.[10]  Plaintiff has put forth no evidence to support the asserted value and "[m]ere theoretical possibilities" are not enough. *Krahn v. Cross Country Bank*, No. 01-cv-2069 (PAM/RLE), 2003 WL 21005295, at *2 (D. Minn. 2003); *see, e.g.*, *Albert v. GEICO Gen. Ins. Co.*, No. 18-cv-113 (SRN/ECW), 2019 WL 2016807, at *11 (D. Minn. Jan. 16, 2019) (unsupported assertion of value not sufficient to meet burden), *adopting report and recommendation*, 2019 WL 1058251 (D. Minn. Mar. 5, 2019), *aff'd*, 784 F. App'x 978 (8th Cir. 2019).

---

[10] *See also infra* Section IV.C.5 (discussing fees).

To be clear, the Court is not requiring Plaintiff "to prove with mathematical certainty" the amount of his damages. *Martin*, 826 F. Supp. 2d at 1138; *see Kopp*, 280 F.3d at 885; *see also Clark*, 639 F.3d at 397. Since the Court has questioned whether subject-matter jurisdiction exists in this case, however, Plaintiff must establish the existence of the amount in controversy by a preponderance of the evidence. *See James Neff Kramper Family Farm P'ship*, 393 F.3d at 831 ("We do not assume the claimed amount is the actual amount in controversy if the court questions whether the amount alleged is legitimate, for then the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." (quotation omitted)). If this standard is to have any meaning at all, there must be evidence, i.e., proof of some sort, offered in support of the claimed amount upon which a fact finder could legally conclude that the damages Plaintiff allegedly suffered exceed the jurisdictional minimum under 28 U.S.C. § 1332(a). *See, e.g.*, *OnePoint Sols.*, 486 F.3d at 349; *Kopp*, 280 F.3d at 885. Put another way, the question is not whether Plaintiff's damages are in absolute terms greater than $75,000, but whether Plaintiff has shown by a preponderance of the evidence that a fact finder could legally conclude that they are. *See Kopp*, 280 F.3d at 885. Plaintiff has failed to do so here.

By the same token, Plaintiff seeks certain medical expenses stemming from Defendant's alleged usurious conduct. (Offer of Proof at 1-2.) Plaintiff values these medical expenses at approximately $14,100.[11] Recognizing that § 995.50(1)(b) allows for

---

[11] $13,238.29 + $800 = $14,038.29. (Offer of Proof at 2.)

compensatory damages and assuming for the sake of argument that these medical expenses could be sought in connection with Plaintiff's invasion-of-privacy claim, Plaintiff has not met his burden with respect to these expenses either.  In support of these expenses, Plaintiff has attached medical records from his hospital stay.  (*See* ECF No. 71-1 at 10-16.)  While these records establish that Plaintiff was in the hospital for a period of time, they do not actually speak to the amounts incurred in connection with and as a result of that stay.

In sum, Plaintiff has failed to meet his burden with respect to damages resulting from the alleged invasion of privacy.

### 4.  Other Non-Federal References

Similar to the various other federal authorities Plaintiff has attempted to invoke outside of his Complaint, Plaintiff has also referenced Wis. Stat. § 138.09 (licensed lenders) and common-law fraud.[12]  Again, Plaintiff has not pleaded violations of Wis. Stat. § 138.09 or brought a claim for fraud in the Complaint, and he has not properly sought leave to amend to include any such claims.  *See* D. Minn. LR 15.1(b); *see also Raynor*, 690 F.3d at 958; *Popoalii*, 512 F.3d at 497.

### 5.  Costs & Fees

Plaintiff has also included a boilerplate request for costs and fees.  Costs are not included in determining whether the jurisdictional minimum has been met.  28 U.S.C. § 1332(a); *McGuire*, 108 F. Supp. 3d at 686.

---

[12] (*See, e.g.*, ECF Nos. 25 at 1, 30 at 1, 49 at 1 (referencing Wis. Stat. § 138.09(9)); ECF No. 50 at 1 ("The court can take judicial notice that plaintiff *Count 1* is not based upon Wis. Chapter 135 but upon fraud . . . ."); ECF No. 51 at 1 (fraud).)

While "[s]tatutory attorney fees do count toward the jurisdictional minimum for diversity jurisdiction," *Peterson*, 867 F.3d at 995 (quotation omitted), and are at the very least available in connection with an invasion-of-privacy claim, *see* Wis. Stat. § 995.50(1)(c), Plaintiff has put forth no evidence regarding the amount of any such fees. Moreover, Plaintiff is representing himself in this matter, further calling into question the availability and inclusion of attorney fees in calculating the amount in controversy. *See, e.g.*, *Roehl v. Ocwen Loan Servicing LLC*, No. 2019AP187, 2019 WL 4806316, at *3 (Wis. Ct. App. Oct. 2, 2019) (citing *Young v. Shaw*, 477 N.W.2d 340 (Wis. Ct. App. 1991)); *see also, e.g.*, *Dixon v. Clearwire Corp. ex rel. Clear Wireless LLC*, No. 11-cv-2558 (JNE/JSM), 2013 WL 7148683, at *9 (D. Minn. Nov. 25, 2013) ("But even if there was a contractual or statutory basis for an award of attorney's fees, a *pro se* litigant is not entitled to attorney's fees for representing himself."), *adopting report and recommendation in part*, 2014 WL 468197 (D. Minn. Feb. 6, 2014); *Gregerson v. Vilana Fin., Inc.*, No. 06-cv-1164 (ADM/AJB), 2008 WL 451060, at *8 (D. Minn. Feb. 15, 2008) ("[T]here is a general principle that pro se litigants are not entitled to attorney's fees otherwise authorized by fee-shifting statutes." (citing cases)). As Plaintiff has put forth no legal authority to support the recovery of fees for representing himself and no evidence as to the amount of any such fees, Plaintiff has failed to meet his burden with respect to the inclusion of any fees in the amount in controversy.

## 6. Conclusion

The parties' dispute is over a $1,994 extended warranty. The amount financed under the Agreement at issue is approximately $13,226.[13] Together, this is $15,220.

Plaintiff also seeks excess interest charged and medical expenses. Plaintiff has not offered sufficient proof in support of either. Plaintiff has not explained or shown how he calculated the $4.05 daily rate of interest he contends has been improperly charged (*see, e.g.*, Offer of Proof at 2), or demonstrated the amount of medical expenses incurred.

But, even assuming the excess interest charged and medical expenses could be construed as being in controversy, Plaintiff still falls well short of the jurisdictional threshold. Roughly 13 months of interest from the date of Plaintiff's purchase in early March 2019 through the end of March 2020 at Plaintiff's claimed rate is approximately $1,600.[14] As stated above, the medical expenses are approximately $14,100. Adding these amounts to the amount of the extended warranty and the amount financed, and thus according Plaintiff the most generous measure of the amount in controversy, the amount is still barely $31,000.[15]

Because Plaintiff has not met his burden to show the amount in controversy exceeds the jurisdictional minimum of $75,000, the Court recommends that this matter be dismissed without prejudice for lack of subject-matter jurisdiction.

---

[13] Arguably, including the entirety of the amount financed double-counts the value of the extended warranty since that amount includes the cost of the extended warranty. *See also supra* n.9.
[14] 393 days (March 4, 2019 through March 31, 2020) x $4.05 per day = $1,591.65.
[15] $1,994 (extended warranty) + $13,226 (amount financed) + $1,600 (interest) + $14,100 (medical expenses) = $30,920.

## V. REMAINING MOTIONS

At present, the Court has three of Plaintiff's motions under advisement: a motion to strike, a motion for summary judgment, and a motion to compel.  Because the Court recommends that this matter be dismissed without prejudice in its entirety for lack of subject-matter jurisdiction, the Court likewise recommends that these three motions, and any other outstanding motions, be denied as moot.  In the interests of completeness, however, the Court briefly addresses the three motions under advisement.

### A.  Motion to Strike

Plaintiff moved to strike Defendant's Answer (ECF No. 4).  Defendant moved for and was subsequently granted leave to amend its Answer to address certain issues identified by Plaintiff in the motion to strike.  (ECF Nos. 13, 40.)  Defendant filed an Amended Answer on August 5, 2019.  Plaintiff's motion to strike Defendant's prior Answer is therefore moot.  *See Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 958 (D. Minn. 2009) ("[A]s a general proposition, if a defendant files a Motion to Dismiss, and the plaintiff later files an Amended Complaint, the amended pleading renders the defendant's Motion to Dismiss moot." (citing *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002)); *see also, e.g.*, *Skky, LLC v. Facebook, Inc.*, No. 16-cv-94 (WMW/FLN), 2016 WL 6915312, at *2 (D. Minn. May 18, 2016) (pending motion to dismiss complaint moot after leave to file amended complaint granted); *Onyiah v. St. Cloud State Univ.*, No. 08-cv-4948 (MJD/LIB), 2011 WL 1868794, at *8 (D. Minn. May 16, 2011) (motion to strike declaration moot after amended declaration was filed).

23

In addition, Plaintiff seeks entry of "Default Judgment under Rule 55." (ECF No. 6 at 1.) "When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998); *see, e.g.*, *Zelenak v. Larson*, No. 15-cv-3315 (PJS/TNL), 2016 WL 6584926, at *3 (D. Minn. Oct. 6, 2016) (citing cases), *adopting report and recommendation*, 2016 WL 6584910 (D. Minn. Nov. 4, 2016). "A motion for default judgment is therefore procedurally improper where, as here, the movant has not yet accomplished the first step: entry of default by the clerk." *Zelenak*, 2016 WL 6584926, at *3 (quotation omitted). Because Plaintiff has not obtained entry of default in this matter by the Clerk of Court, his request for default judgment is procedurally improper. Moreover, Defendant has not failed to plead or otherwise defend itself in this action.

## B. Motion for Summary Judgment

Plaintiff has also filed a motion for summary judgment. Plaintiff's motion was filed very early in this litigation, even before the parties appeared before the undersigned for the pretrial conference under Rule 16. "As a general rule, summary judgment is proper only after the nonmovant has had adequate time for discovery." *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999) (quotation omitted); *accord Jackson v. Riebold*, 815 F.3d 1114, 1121 (8th Cir. 2016). Thus, "[a]lthough discovery does not have to be completed before a district court can grant summary judgment, summary judgment is proper only after the nonmovant has had adequate time for discovery." *Ray v. Am. Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010) (quotation omitted); *see Unity Healthcare,*

*Inc. v. Cty. of Hennepin*, 308 F.R.D. 537, 541 (D. Minn. 2015) ("But, summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." (quotation omitted)).  At the time Plaintiff's motion was filed, Defendant had little if any time to engage in discovery as the parties had just conferred as required by Rule 26(f) approximately one week before.  (ECF Nos. 20, 26.)  *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . .").

In any event, Plaintiff has not met his burden under Rule 56.  Under Rule 56(a), courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *accord Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012).  "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Gannon Int'l*, 684 F.3d at 792.  "To establish a genuine issue of material fact, . . . [the non-moving party] may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in his favor." *Turner v. Mull*, 784 F.3d 485, 489 (8th Cir. 2015) (quotation omitted).

Plaintiff states that his motion is "based upon the premise that [Defendant] has no valid assignment or authority over [his] purchase of a used 2018 Toyota Corolla under the

agreements attached hereto." (ECF No. 25 at 1.)  Plaintiff states that he "has not approved financing with [Defendant]" and Defendant "has not provided [him] with a valid assignment." (ECF No. 25 at 1.)  In support of his motion, Plaintiff relies in part on the Agreement.  (*See* ECF No. 25 at 1, 4-9.)

Plaintiff has provided the Court with Parts 5 and 6 of the Agreement, which are each described as "DEBTOR'S COPY."  While Plaintiff is correct that the phrase "NOT ASSIGNABLE" is stamped on certain parts of the Agreement, (*see, e.g.*, ECF No. 25 at 5 ("Part 5 – DEBTOR'S COPY – NOT ASSIGNABLE")), other parts of the Agreement expressly state that it *may* be assigned.  In fact, Defendant's name appears in the space indicating who "[t]his Agreement may be assigned to ('Assignee')."  Further, Defendant has provided Part I of the Agreement, which is described as the "Original Bank Copy." (ECF No. 37-1 at 1.)  Albeit rather difficult to read, Part I of the Agreement, as Defendant points out, includes an "Assignment" section.  (Def.'s Mem. in Opp'n a 3, ECF No. 36; ECF No. 37-1 at 2.)  Plaintiff has not shown that he is entitled to judgment as a matter of law.

## C. Motion to Compel

Although referencing Federal Rules of Civil Procedure 34 and 26(b) in the caption of his motion, Plaintiff appears to be moving to compel the production of certain discovery from Defendant under Rule 37.  *See* Fed. R. Civ. P. 37(a)(1).  Plaintiff contends that Defendant has withheld certain discovery from him related to his account and failed to identify/designate certain witnesses.

It is not apparent from the record that Plaintiff has served any sort of formal discovery request on Defendant for the information he seeks and that Defendant has failed to respond. Exhibit 1 to Plaintiff's motion references what appears to be an informal discussion between Plaintiff and Defendant's counsel regarding witnesses and documents, and this discussion appears to be the basis for Plaintiff's motion. (ECF No. 56 at 1.)

Moreover, as outlined by Defendant in its response, Defendant has been trying to work with Plaintiff to better understand what he was seeking and to facilitate document production. When Plaintiff complained that Defendant had not identified a representative for him to depose, Defendant referred Plaintiff to Rule 30, and specifically his obligations under Rule 30(b)(6) to "describe with reasonable particularity the matters for examination." *See Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) ("Accordingly, to allow [Fed. R. Civ. P. Rule 30(b)(6)] to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."). There is no indication that Defendant was served with a proper deposition notice and failed to appear.

With respect to the production of documents, Defendant had been gathering documents despite the fact that it had not received any sort of formal document request and attempted to work with Plaintiff for entry of a protective order because some of the documents contained Plaintiff's private personal information. (ECF No. 59 at 2; ECF No. 60-1 at 9, 18-19.) When Defendant was not able to reach an agreement with Plaintiff on a proposed protective order, Defendant had the personal identifiers redacted from these

documents and produced them to Plaintiff electronically on August 26.  (ECF No. 60-1 at 22.)  Notwithstanding Defendant's production, Plaintiff filed the motion to compel the same day, approximately four hours later.

At bottom, Plaintiff has not shown that Defendant has failed to respond to a proper discovery request.

[Continued on next page.]

## VI. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. This matter be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

2. Plaintiff's motion to strike (ECF No. 6); motion for summary judgment (ECF No. 25); and motion to compel (ECF No. 55) be **DENIED AS MOOT**.

3. Any remaining motions be **DENIED AS MOOT**.

Date: January__30__, 2020                                         _____*s/ Tony N. Leung*_____
                                                                                       Tony N. Leung
                                                                                       United States Magistrate Judge
                                                                                       District of Minnesota


                                                                                       *Rader v. Ally Financial, Inc.*
                                                                                       Case No. 19-cv-1275 (NEB/TNL)


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).